Our fourth case for this morning is Severson v. Heartland Woodcraft. Mr. Dill. Good morning, Your Honors. Chief Judge, may it please the Court. Just for clarification's sake, I've asked to speak for seven minutes, followed by Amicus Counsel Susan Oxford for five minutes, and then I'll ask for three minutes for rebuttal. All right. Just pay attention to your lights. Your Honors, Bright Line rules really have no place in determining whether an employer can provide an employee with a reasonable accommodation under the Americans with Disabilities Act. But that is exactly the basis for the District Court's decision in this case. The District Court relied on Byrne v. Avon Products, Incorporated to conclude that because Mr. Severson requested leave of a certain limited duration, he was automatically excluded from the protections of the ADA. Not only is Byrne a very factually distinguishable case, but interpreting Byrne in this manner actually conflicts with the Supreme Court's precedent in U.S. Airways v. Barnett, this Court's precedent in Oconomowoc Residential Programs v. the City of Milwaukee, and more recently, the 2008 ADA Amendments Act. This Court took the opportunity to summarize the Barnett holding in its recent decision in EEOC v. United Airlines as requiring a two-step analysis whenever there's a reasonable accommodation that's at issue in a case. First, the Court looks to see whether the accommodation is reasonable on its face or in the run of cases. And if not reasonable in the run of cases, then the Court looks to the particular facts and circumstances of the case to determine if there's something there that shows it's reasonable in this instance. So let me ask you this, Mr. Dill. You know, both you and the Commission discussed leave as a type of thing that could be a reasonable accommodation. There seems to be a lot of law supporting that. But is there some outer limit in your view? You know, if somebody comes in and says, I'm going to need a year off or I'm going to need 10 years off, you know, Is there some point at which the employer is entitled to say, that's just too long, we need to move on with our business, and we can't manage that? How does that factor in? An employer is always going to have that opportunity to do so when the burden shifts to the undue burden analysis. The undue hardship. Undue hardship, I'm sorry. That's the box that you want that consideration to be. Right. I mean, it's... Which we did not reach here. The District Court did not reach undue hardship in this case. No, he specifically did not address undue hardship. But it's too difficult for this court to attempt to, like I said, paint a bright line rule that applies to all of these cases. Rather, the analysis should be, what is the employer e-requesting? Is it reasonable? And if it's reasonable, then we move on to the undue hardship analysis, which didn't take place here. Even if the court doesn't consider Mr. Severson's specific request for leave to be one that's reasonable in the run of cases, there is evidence before the court in this case that demonstrates that the leave was reasonable under these circumstances. First and foremost, Heartland, both before, during, and after Mr. Severson's period of leave, relied on employees already on staff to fill this position of second shift leave. So just to remind me, the medical care he's getting during the FMLA leave seems to be something that's ratcheting up. He's getting shots and he's getting things like that, and the doctor is saying, if this doesn't do the job, then we're going to have to move to surgery, right? Correct. So it's not that he deliberately waited to schedule the surgery for the last day of the FMLA leave. No, Your Honor. He was trying some non-surgical procedures to try and address the flare-up of his back disability. When those didn't work, it was his doctor's recommendation that surgery would be the next step, which is what he tried. And that's what he communicated at all times with Heartland. And just also to clarify, when he calls Heartland in early August and asks for the extension, sort of the ADA leave, is it August the 13th he makes that call? At that point, his testimony is that he tried to contact them further and they wouldn't talk to him about accommodations. Right. There really is no dispute. And if you look at Counsel for Heartland's briefing, all of the discussions took place up until August 13th, when Mr. Severson makes this request for, hey, the non-surgical stuff, it's not working. I need to try surgery. It's going to take me about two months, according to my doctor, to recover from this. I'd really like to extend the leave. At that point, Heartland goes silent. Heartland doesn't engage in any further communication with him until August 26th, when it tells him you're not coming back after your FMLA leave on tomorrow expires, you're fired. So there is no interactive process here between the employer and the employee, despite Mr. Severson's attempt to engage Heartland with that. And you don't see the interactive process obligation as arising until the FMLA leave is done. So, I mean, they cite a bunch of things in their briefs about, oh, we have this conversation and that conversation. But that's all during the FMLA leave before he's asked for the two months, right? Right. Heartland didn't have a choice but to provide the FMLA leave here. It's once Mr. Severson makes Heartland aware that, hey, I need an accommodation outside the bounds of the strict FMLA leave, that Heartland then did not engage in an interactive process whatsoever. And that's what makes this case different than Byrne, where the employee in Byrne had no communications with his employer about a disability, didn't make any requests for accommodation prior to termination. The employee simply walked off the job and sought to return a couple weeks later. As I said before here, Mr. Severson at all times is openly communicating. The record is full of evidence showing that Heartland was well aware of not only the disability, but exactly the surgical procedure that Mr. Severson was going to undertake in the approximate time that he was expected to need for leave. So what was the state of the evidence that after full recovery from this surgical procedure, he was going to be restored to the ability to work without limitations? Did we ever get to that? Of course, that's what finally happens, but we know that in hindsight. In foresight, was it ever put on the table that I'm going to be fine once this is over with? That's what Mr. Severson had communicated in his August 13th, was that his doctors had recommended surgery and that the approximate time of recovery from that surgery  And that that would be back to 100%, no lifting limitations, no other limitations. Right, that's what he expected at the time that he had made the request. And it's significant here that Heartland didn't ask for anything more from Mr. Severson regarding his condition or the surgery. The failure of the interactive process part of the case is not independently actionable as a violation. No, and where we get to that part, Your Honor, is that the accommodation request here was a reasonable one that Heartland could have provided. I just want to go back to one point. This court recognized in Hoshman v. Time Warner Entertainment Company that there are avenues for the employer to request more information to find out more about what the employee needs or what's going on with the disability that Heartland simply didn't exercise here and Mr. Severson is in a position to read minds to determine what they need to be sure of what he needed here. But going to the reasonable accommodation issue, we have evidence in the record that demonstrates that what Mr. Severson was requesting here was a reasonable accommodation that Heartland could provide. As I said, Heartland had other employees on staff that it relied on. That's another fact that this court relied on in Hoshman v. Time Warner Entertainment Company to determine that it was a reasonable accommodation that the employer could provide. You might be in your either rebuttal or Ms. Oxford's time. I'm just going to tell you. Okay. Well, I will then stop here and reserve the remaining of the time for rebuttal. Thank you. Oh, thanks. Good morning and may it please the court. My name is Susan Oxford. I represent the Equal Employment Opportunity Commission as amicus curiae in this case. Leave is different from absence and that's a critical distinction that the district court did not understand below. And because the district court... I'm not sure I understand it either. The ADA is designed to protect people who can do the job with an accommodation and your position seems to be it also protects people who can't do the job, which is why they need leave. This court has recognized for years that leave is a type of accommodation that the ADA contemplates employers might provide to individuals. So after the period, let's call it two months, after that accommodation, then you are able to do the job. So the accommodation is just temporally a little distinct. But I understood your argument to say, you know, if you needed the employer to build a ramp, that might take a few weeks also and it doesn't mean that you couldn't do the job once the ramp has been built. Exactly. The assessment of whether the accommodation will be effective takes place at the time the individual requests it. But what the court and the employer needs to look at is whether providing that accommodation would, in fact, enable the individual to return to work. So it seems to me that many employers might be able to show that leave of any significance would impose an undue hardship on their business because they need to have people staffing jobs. They don't want people sort of floating in and out, constantly being trained. That's exactly correct, and that's the protection that Congress built into the Act. But Congress appropriately placed that protection on the employer, the burden of proving that, because it would be the employer who would best know and have access to the evidence to demonstrate that. And I think this is an important illustration of why that works, because here, once Mr. Severson requested his two- or three-month leave, it would be Heartland who would be in the position to be able to demonstrate how quickly did it begin to look for a replacement, how much effort did it put into that, and what was happening in its workforce and in its production while that was happening. So what significance is it, if any, that Mr. Severson is actually asking for a fairly extended time off? He's already had, of course, what he's entitled to by law, his FMLA leave. And now he wants another few months, two months, let's call it. And so that leaves the company without somebody in this position for a pretty long time. The EEOC has proposed three criteria that would inform when a request for a leave is a reasonable request, and that is that the individual asks in advance for a defined period of leave and that the period of leave they requested will likely enable the individual to return and resume his job. Your Honor asked Mr. Dill whether there's an outside limit on how much time would be reasonable, and we believe that the third criterion that I suggested, that the amount of time requested will likely enable the individual to return to work. At some point, no doctor's projection is going to be credible if they say, yes, if this individual just has 15 months of leave, then they'll be able to return to work. At some point, the amount of time being asked and the reason for the request, if it's an individual who has a very unstable condition for which medication is not working and the doctor says, if you just give us six or eight months, I think that maybe we'll find a drug in that time, you've lost the certainty that the EEOC suggests should be part of the element. Six or eight months of surgical recovery? Your hypothetical was drugs, I thought. Yes, my hypothetical was drugs. If it was surgery, then there's usually a body of experience that says how long surgery takes. In this instance, two or three months was the expected. So it's the position of your agency that duration doesn't really count as a factor to consider as long as there's a likelihood or a demonstration of a likelihood of ability to return at some point. Yes. Well, I thought you were saying it counts a lot at the undue hardship stage, but that it doesn't count as upfront. I mean, and somebody risks an immediate finding of undue hardship if it's too long. Exactly. I'm sorry, I thought you were asking me about the reasonableness assessment. Right. I'm trying to get the totality of the agency's position on what counts as the court examines the reasonableness of the accommodation request. And you're saying the duration doesn't matter as long as the leave will enable the employee to return at some point. That is true, and there's an important point. I have the red light. May I just answer this one? You may finish. In Heartland's brief at page 49, note 26, they quote an EEOC guidance, and the way they quote it in the parenthetical might appear to suggest that the EEOC thinks six months is beyond reasonable as an amount of time. And the section they're quoting goes to whether an employer needs to reassign an employee to a vacant position, and it's the EEOC's position that if you know a vacancy might occur in six months or more, that that's too long to have to wait to have the person on hold saying, I will reassign you in six months. That mention of six months is limited to reassignment to a vacant position, but when it comes to requesting leave, the other criteria would dictate what constitutes reasonable and a period of time would properly be assessed within the undue hardship analysis. If the Court has no further questions, we rely on our brief. Thank you. Mr. McClurg. May it please the Court. The EEOC's position that any defined period of leave must be considered reasonable is so overreaching as to be almost absurd. It applies directly in the face of the Mr. McClurg, let me ask you. I've been trying to think of how to deal with this because, obviously, we don't like utterly open-ended things. You could deal with it all with hardship or you could deal with it with the concreteness of the ability to recover, but suppose the person seeking leave was a university professor and the university professor said, you know, I need a leave of one semester, four months. And so four months is longer than what you're talking about, but it might actually, for the employer, be a very desirable way to do it rather than having somebody parachute into a class halfway through it. So isn't the length of the leave very context-specific? Doesn't it depend on the job? In Barnett, this Court said that the reasonableness of leave must be determined both on the basis of its effectiveness and its objective reasonableness, whether it's reasonable on its face or in the run of cases. That was the Supreme Court, right? Yes, Supreme Court. That wasn't us, just for the record. Yes, the Supreme Court. And in the particular circumstances, it remains the employee's burden to show that the proposed leave is both reasonable and effective, as this Court said in Van Zandy, in light of the costs that might be imposed. Right. It's the employee's burden. Why didn't the employee here, who says, you know, I've tried all these other things. It turns out I'm going to need surgery. My doctor tells me two to three months and I'll be good as new. Why isn't that reasonable? If somebody broke their leg, you know, it takes six weeks or two months for the leg to knit. There are all kinds of things in the orthopedic world that are in that length of time. And then the burden would shift and your client would have the opportunity to say, you know, we just can't hang on another three months. And you'd introduce whatever evidence you had that maybe gets beyond a single Craigslist posting. In any case, Your Honor, if it is the plaintiff's burden to establish a prima facie case. Yeah, and that's what the plaintiff has done here. The plaintiff has said, here's my doctor. You never challenged him. You never talked to him about it and said, well, you know, could you come back, you know, on a limited duty basis in the middle of October. I mean, there's no conversation like that that happens. So we don't know. In all due respect, we do not believe that Mr. Severson did establish his prima facie case. This Court said in Byrne that a request for a multi-month leave of absence is unreasonable. We didn't say any magical number of days. I mean, I know your entire brief is premised on the notion. That's why I gave you the university faculty member. It depends on the job and the context. And there are some jobs that might operate in four-month segments of time. There are other jobs that might operate day by day, for all I know. So I really don't think that there's anything magic about the phrasing in Byrne. Your Honor, this Court stated in Wagner that the ADA requires interpretation and line drawing. ADA cases are routinely dismissed when it's determined as a matter of law that the employee's proposed accommodations do not constitute reasonable accommodations. But ADA cases are routinely allowed to go forward if the employer drops the ball and there is no discussion about the way that a particular disability could be accommodated. It needs to be a way, and he's offered several. Leave is one possibility. He actually has put some others on the table too, but there's never any resolution of that. Well, Van Zandy said that it remains the employee's burden to prove that the accommodation is not only efficacious but reasonable in the sense of being proportional to cost. Exactly, and so why doesn't the employer need to pick up the phone or answer the phone and at least say, oh, I'm sorry, but we can't hang on another two or three months. You've got to propose something else. Something. You didn't do that. Heartland engaged in the interactive process with Severson to the fullest extent demanded under the circumstances. It did not say a word to him after the 13th of August. And during his FMLA leave was not the time anything interactive was going on. For all anybody knew, he was going to be right back at work thanks to the cortisone shots. Well, Your Honor, I disagree. Mr. Severson was disabled not only at the point where it was determined that he had surgery. He had a disc problem all through his period of FMLA leave that would qualify him as disabled, and Heartland engaged in the interactive process throughout that period. He didn't say so. You can't make his case up for him. It's his case. And he had been working for many years at Heartland with this same disc problem, dealing with it presumptively through medications and things like cortisone shots. That's what a lot of people do. So the fact that he's taking an FMLA leave doesn't tell me anything about whether he's going to need surgery one day. No. Or it doesn't tell me anything that he wouldn't be able to go back on August the 28th. Two weeks before the end of his FMLA leave, when he advised Heartland that he needed a two-month leave, possibly three, to have this surgery, he said nothing about his ability to return to work during that period of recovery. Right, and what did Heartland say? What did Heartland say? Did they say, that's not going to work for us, but let's look to see if there's some other accommodation that would work? Is there any back and forth? No. They had no obligation to do that because he said. Well, I'm not sure that's correct as a matter of law. Well, Heartland's policy said that it was the employee's duty to provide them with some type of doctor's report that would explain the nature of their limitations so that Heartland could evaluate whether there was any other opportunities. Did Heartland ever tell him that we haven't gotten enough documentation from you after the August 13 call? No. No, they did not. So Heartland can say all at once in its policies, but there's a federal law here. And, in fact, as Judge Wood points out, there was no obligation to, well, I shouldn't say there was no obligation, but any failure to engage in the interactive process does not give rise to an action under the ADA unless the employee can show that there was a reasonable accommodation that would have allowed them to perform the essential functions. And this employee has offered three or four, leave, the light-duty work that was given to other people, and a couple of others that are in the brief. So I don't see this as an accommodation-only claim. The employee has come forward with things and never has an exchange with Heartland about which of those, if any, will work. Heartland never works with him. I'll do respect. I do not believe this is a light-duty case. First, because Severson never requested light-duty work as an accommodation. Second, Heartland had no regular light-duty positions that it could have offered. And third, he was not even released to work in any capacity for over seven weeks after his surgery and the end of his FMLA leave. This court in Jovanovich said that the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches. So you actually don't think the employer has to do anything. Your view is the employee can say, I would like this, and the employer can just remain silent, never say a word, never do anything, because what you did was that. You just fired him the day after. You didn't talk to him. So I guess your view is that that's what the ADA requires. When the employee gives the employer every reason to believe that the only accommodation that would have allowed him to return to work was an extended leave. Why do you assume that without asking him? Because of what Mr. Severson said to Ms. Schrader when he called. He said he was going to have this serious back surgery, it would take two months of recovery, and every note that the employer had received to that point was that he would be unable to work until further notice. We never got any notice that he would be able to work in any capacity at any point following this surgery. I believe that the Act places some responsibility on the employee to give some indication that there would be something other than leave in this situation that should have been considered. But even if he had asked for late duty and that had been explored, it wasn't available, we didn't have those kinds of positions. The EEOC argues that Byrne should be overturned because it didn't engage, the employer here didn't engage in a fact-intensive inquiry and that these cases must be decided on a case-by-case basis. But as I said, this Court stated in Wagner that the ADA requires interpretation and line drawing. That has happened in other cases. For instance, in job restructuring, certainly that can be a reasonable accommodation, but not if it would require creation of a new position or elimination of essential functions or addition of an assistant. Stern v. St. Anthony's held that these types of accommodations are unreasonable as a matter of law, even if they place no burden on the employer whatsoever. The same kind of long line drawing is necessary with respect to extended leaves of absence, even if it means that the employer is not required to show that the leave would cause undue hardship. As in any case, if plaintiff cannot establish a prima facie case, the defendant need not prove an affirmative defense. The costs associated with extended leaves impose significant burdens generally on employers. Which, of course, the employer would have been entirely within its rights to bring up under the undue hardship. But Van Zandy says that that's part of the employee's burden to show that the proposed accommodation would not only be efficacious but reasonable in the sense of being proportional to cost. But of course, only the employer knows what its own costs are. Are you volunteering to turn over your financial records to the employee so that it will make that showing? But we are talking about an objective reasonableness standard established in Barnett. Yes, so am I. And the costs imposed on employers generally are significant, including the cost of- Why is this something that the employee has access to? That's the question I'm asking you. In general- The employee isn't going to know, let's take Heartland, whether it's going to be necessary to put somebody new in this position immediately in September or whether, in fact, as Heartland does, they just sort of throw in one Craigslist ad and do a little bit of an internal search and fill the job at the end of November or whether it could go all the way until next April. I mean, the employee doesn't know that. The party who knows that is the employer. Those are specific aspects of undue burden. And you would agree with me that the employer is the one who knows its own business. Absolutely. But the court in Barnett and this court in Van Zandy put the burden on the employee to show the objective reasonableness of a proposed leave. A type of accommodation. Yes. Well, not just a type because if it was just a type of accommodation that had been approved in other cases, even leave of indefinite duration would be a reasonable accommodation. Yes, but as you've just pointed out, some types of accommodation are not required. An employer doesn't have to create a new job, for example. That's a type, and it's ruled out. And that's one of the places where the courts have drawn a line, and it should draw a line as it did here in Barn that multi-month leaves of absence are not reasonable as a matter of law. Okay. So the cases cited in support of the EOC's position are distinguishable here. Garcia, Ayala, Serds, and Nunes all predate and are inconsistent with Barnett in that they don't apply an objective standard of reasonableness of a proposed leave, and they're distinguishable from Byrne and the facts of this case because they all involve requests of leaves of less than two months. Those cases also improperly conflate a plaintiff's burden to demonstrate the existence of an objectively reasonable accommodation with the employer's burden to demonstrate that such an accommodation, once it's been established, would be unduly burdensome. Serds has also been undercut by the Sixth Circuit's recent decision in Stallings versus Detroit Public Schools, where the court found that a fixed leave of four months was not a reasonable accommodation. Now, contrary to the EEOC's position, appellant's counsel candidly admits in this brief that this court may fairly consider that a lengthy leave of absence is not reasonable in the run of cases. His attempt to salvage the leave issue based on Barnett's special circumstances analysis is destined to fail here. Like the appellant in Bell versus Dupereaux, Severson waived this argument by failing to raise it before the trial court. But even if not waived, appellant's special circumstances argument fails here because that analysis applies only in reassignment cases as a caveat to the general rule that a bona fide seniority policy trumps a disabled employee's right to reassignment. After describing the reasons supporting this general rule, Justice Breyer stated, quote, the plaintiff nonetheless remains free to show that special circumstances warrant a finding that despite the presence of a seniority system, the requested accommodation is reasonable on the particular facts. That is because special circumstances might alter the important expectations described above. All right. Thank you very much. Anything further, Mr. Dill? Just one quick point to add to the evidence in the record, Your Honors. Ms. Schrader's affidavit, which Heartland quotes on page 7 of its brief, references page 7 of its brief, she admitted there that Schrader had no reason to doubt the accuracy of Mr. Severson's report on August 13th because Severson had received this information from Dr. Hollowell and had accurately communicated his restrictions in the past. So, again, we see that Heartland had the information that Severson could provide and he, again, can't read their minds as to what more they need to be able to determine if they could provide him this reasonable accommodation. As you can see, these cases are highly fact-intensive, and it's with good reason. One-size-fits-all approaches are ill-suited for ADA reasonable accommodation cases. Here, Mr. Severson has evidence that's in the record that demonstrates there was multiple reasonable accommodations that Heartland could provide, but it refused to even engage in an interactive process with him to determine what might work best for its workplace. For these reasons, this Court should reverse the District Court's summary judgment order and remand this case for trial. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.